1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVID ELDER (SBN 171510)
JOEL MARRERO (SBN 275601)
jmarrero@housingrightscenter.org
TERI YIN (SBN 240471)
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA  90010
Tel.:   (213) 387-8400 x1116
Fax:   (213) 381-8555

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| SERGIO SALAZAR, an individual, and ALMA SALAZAR, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ZHI MIN LI, an individual,<br><br>Defendant. | ) Case No.: 2:16−cv−03741 CAS (AJWx)<br>)<br>) Assigned to Courtroom: 5<br>) The Hon. Christina A. Snyder<br>)<br>) *EX PARTE* **APPLICATION FOR A**<br>) **TEMPORARY RESTRAINING**<br>) **ORDER AND ORDER TO SHOW**<br>) **CAUSE RE: PRELIMINARY**<br>) **INJUNCTION; MEMORANDUM**<br>) **OF POINTS AND AUTHORITIES**<br>) **IN SUPPORT THEREOF;**<br>) **DECLARATIONS OF ALMA**<br>) **SALAZAR, LILIAN CALDERON,**<br>) **TERI YIN**<br>)<br>) [Filed concurrently with Proposed Order<br>) to Show Cause, Proposed Order<br>) Granting Application for Temporary<br>) Restraining Order]<br>)<br>) Action Commenced: 05/27/2016<br>) Trial Date:  Not Set<br>) Discovery Cut-Off:  Not Set<br>) Law & Motion Cut-Off:  Not Set<br>) |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to Central District Local Rules 7-19 and 65-1, and Fed. R. Civ. P. 65, Plaintiffs Sergio Salazar and Alma Salazar ("Salazars") hereby apply to this Court *ex parte* for a Temporary Restraining Order ("TRO") and Order to Show Cause Re: Preliminary Injunction.   The Salazars requests a TRO and preliminary injunction to prohibit Defendant from commencing eviction proceedings against them pending a hearing on this Court's Order to Show Cause Re: Preliminary Injunction.   Unless enjoined by this court, Defendant may proceed with an eviction against Plaintiffs as early as June 6, 2016.

In support of this Application, Plaintiffs submit the accompanying Memorandum of Points and Authorities, the Complaint filed in this case, declarations, and other documents filed concurrently herewith.

Pursuant to Local Rule 7-19.1, on June 1, 2016, Plaintiffs' counsel spoke with Defendant's son who spoke on Defendant's behalf.   Defendant's son indicated that Defendant was not currently represented.   Plaintiffs' counsel advised Defendant's son that Plaintiffs would request a temporary restraining order to stop Defendant from filing an unlawful detainer against them unless Defendant agreed not to file the unlawful detainer.   Defendant's son indicated that Defendant could not make a decision and needed to consult an attorney.

As of the filing of this Application, Plaintiffs' counsel is causing the Application and corresponding documents to be personally served on Defendant.

Dated:  June 2, 2016                              Respectfully Submitted,

JOEL MARRERO
Attorney for Plaintiff(s)

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION .......................................................................1

II.   FACTUAL BACKGROUND..........................................................2

III.  ARGUMENT...............................................................................5

    A.   Standard for Granting Injunctive Relief.................................6

    B.   Plaintiffs Will Likely Succeed on the Merits of their Claim of
        Familial Status Discrimination.............................................7

        1.   The Manner in Which Defendant Enforces Building Rules
            Discriminate Against Plaintiffs on the Basis of Familial
            Status .......................................................................7

        2.   Defendant's Notices and Statements Concerning Children
            Discriminate against Plaintiffs on the Basis of Familial
            Status .......................................................................9

    C.   Plaintiffs and Their Four Minor Children Will Likely Suffer
        Irreparable Harm ...............................................................10

    D.   The Balance of Hardships *Strongly* Tips in Plaintiffs' Favor.............11

    E.   Where Injunctive Relief Provides Protection Against Housing
        Discrimination, It Furthers the Public Interest.....................12

IV.   CONCLUSION............................................................................13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bangerter v. Orem City Corp.*
46 F.3d 1491 (10th Cir. 1995) ...........................................8

*Brown v. Artery Org. Inc.*
654 F. Supp. 1106 (D.C. DC) ...................................... 11, 12

*Congress on Racial Equality v. Douglas*
318 F.2d 95 (5th Cir. 1963) ...........................................7

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*
448 F.3d 1118 (9th Cir. 2006) .........................................6

*Fair Housing Congress v. Weber*
993 F. Supp. 1286 (C.D. Cal. 1997) ...................................8

*Federal Leasing, Inc. v. Underwriters at Lloyd's*
487 F. Supp. 1248 (D. Md. 1980)......................................1

*Gresham v. Windrush Partners*
730 F.2d 1417 (11th Cir.) ......................................... 11, 13

*Jackson v. Jacobs*
971 F. Supp. 560 (N.D. GA 1997).................................. 7, 12

*Jancik v. HUD*
44 F.3d 553 (7th Cir. 1995) ...........................................9

*Johnson v. U.S. Dep't of Agriculture*
734 F.2d 774 (11th Cir. 1984) .......................................10

*Lopez v. Heckler*
7 25 F.2d 1489 (9th Cir. 1984) .......................................6

*McNeill v. New York City Housing Authority*
719 F. Supp. 233 (S.D.N.Y. 1989) .................................12

*Mitchell v. U.S. Dep't of Housing & Urban Dev.*
  569 F. Supp. 701 (N.D. Cal. 1983) ...................................................10
*Ragin v. New York Times Co.*
  923 F.2d 995 (2nd Cir. 1991).........................................................9
*Sammartano v. First Judicial Dist. Court*
  303 F.3d 959 (9th Cir. 2002) .........................................................12
*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*
  251 F.2d 774 (11th Cir. 1984) .......................................................11
*United States v. M. Westland Co.*
  Fair Housing – Fair Lending ¶15,941 (C.D. Cal. August 3, 1994) ......................9
*United States v. Odessa Union Warehouse Co-op*
  833 F.2d 172, 176 (9th Cir. 1987) ..................................................13
*Vision Sports, Inc. v. Melville Corp.*
  888 F.2d 609 (9th Cir. 1989) ........................................................6

**OTHER AUTHORITIES**

11 C. Wright & A. Miller
  Federal Practice and Procedure.......................................................7
*HUD v. Paradise Gardens,* Fair Housing – Fair Lending ¶25,037
  (HUD ALJ 1992) ......................................................................8

**CALIFORNIA CODES**

Cal. Gov't Code § 12955.6 ..............................................................7

**FEDERAL STATUTES**

42 U.S.C. § 3604(b) ..................................................................7, 8
42 U.S.C. § 3604(c) ....................................................................9
42 U.S.C. § 3613(c)(1).............................................................. 11, 12
42 U.S.C. § 3613(d) ...................................................................11
42 U.S.C. §3601 ......................................................................12

**FEDERAL CODES**

24 C.F.R. § 100.1 et seq. ...........................................................................7

24 C.F.R. § 100.65(b)(4) ...........................................................................8

24 C.F.R. § 100.75(b) ...............................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 65 and the federal Fair Housing Act, 42 U.S.C. § 3613(c), Plaintiffs Sergio Salazar and Alma Salazar ("Salazars"), tenants at Defendant's residential rental property located at 3425 Baldwin Park Boulevard, Baldwin Park, California 91706 ("subject property") respectfully submit this memorandum in support of their *ex parte* application for a temporary restraining order ("TRO") to enjoin Defendant from commencing eviction proceedings against them.

Plaintiffs seek this injunctive relief "to preserve the status quo during the course of litigation in order to prevent irreparable injury to the moving party and in order to preserve the ability of the court to render complete relief." *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 487 F. Supp. 1248, 1259 (D. Md. 1980), order aff'd, 650 F. 2d 495 (4th Cir. 1981).

The Salazars filed an action in this Court against Defendant for familial status discrimination in connection with the rental of the subject property. Defendant's rules and policies create an unbearable and oppressive living environment for families with children.  Defendant, through her onsite manager, Diana Cuamea, has implemented and enforced rules that deny minor children access to common areas of the property.  When tenants violate Defendant's rule even in the slightest manner, Defendant resorts to threats of eviction or eviction itself as is the case with the Salazars.

A TRO is necessary to avoid grave and irreparable harm because the filing of the eviction proceeding by itself will be public record and undermine Plaintiffs' ability to secure future housing.  In addition, if Defendant prevails in an unlawful detainer, the Salazars and their four minor children will be forced to move from their home of 13 years where they have established community ties.  The Salazars will be forced to find alternative housing that will likely be inadequate because of

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

the speed and summary nature of an unlawful detainer proceeding.  Moreover, the Salazars' ability to vindicate their fair housing rights in this Court would be undermined by a potentially conflicting state court judgment.  Importantly, the filing of an unlawful detainer itself will undermine the Salazars' ability to find housing as a future landlord would likely view that as a record of unsuitability without inquiring or knowing about the discriminatory circumstances that precipitated the unlawful detainer filing.

The Court should grant the Salazars' request for a TRO because the Salazars are likely to succeed on the merits of their claims against Defendant, they will likely suffer irreparable harm in the absence of an injunction, the balance of equities tips strongly in their favor, and injunctive relief is in the public's interest as it provides protection against housing discrimination.

## II.    FACTUAL BACKGROUND

The Salazars and their four minor children have resided at 3425 Baldwin Park Boulevard, Baldwin Park, California 91706 ("subject property") since 2003. Salazar Decl. at ¶ 4.

On or around January 18, 2011, Defendant issued a notice to tenants at the subject property stating there were new rules and regulation added to the tenants' contracts.  Salazar Decl. at ¶ 5.  In relevant part, the rules state, "The activities and conduct of resident, resident's guests and minor children of resident or guests, outside of the unit on the common grounds, parking areas or any recreation facilities must be reasonable at all times and not annoy or disturb other persons." *Id*.  Although the rule is facially neutral as to children, in or around the same period, Defendant's onsite manager enforced this rule exclusively against minor children.  Salazar Decl. at ¶ 6.  Routinely the manager verbally informed the Salazars and the other tenants that minor children were not allowed in common areas.  *Id.* Ms. Cuamea enforced this rule even when minor children were under adult supervision.  *Id.*

On April 4, 2016, two minor children who lived at the subject property asked Ms. Salazar if her nine-year old daughter could go outside in the common area with them.  Salazar Decl. at ¶ 7.  Ms. Salazar allowed her daughter to go outside their apartment while she monitored the three children as they talked.  *Id.*  While the children were outside, Ms. Salazar received a text from the onsite manager asking her to keep her daughter and another minor child inside.  *Id.*  Ms. Salazar texted that she was watching the children and what they were doing, noting that her apartment door was open.  *Id.*  The onsite manager invited Ms. Salazar to her apartment at 8:00 p.m. to resolve the problem.  *Id.*

Ms. Salazar later spoke with the manager over the telephone.  During call, the manager reiterated that minor children were not allowed in the common areas of the subject property.  Salazar Decl. at ¶ 8.  Ms. Salazar told the manager that she was watching her daughter through her apartment window and that her daughter was abiding by the posted sign in the common area that prohibited bicycles, skateboards, and ball throwing.  *Id.*  Ms. Salazar understood a posted sign as a rule against activities by minor children.  The manager then told Ms. Salazar that if she disagreed with the rules against minor children, the manager could issue a 30-day notice to terminate Ms. Salazar's housing.  *Id.*  The manager, in a raised voice, asked Ms. Salazar to attend a tenant meeting at 8:00 p.m.  *Id.*  After the call, Ms. Salazar's daughter went inside the apartment.

Around 8:00 pm that evening, the onsite manager held a meeting for tenants with minor children, including Ms. Salazar, to remind them that minor children were not permitted in the common areas.  Salazar Decl. at ¶ 9.  At the meeting, the manager told the tenants that she would permit minor children in the common areas if every family with a minor child signed an agreement where they would assume liability for any property damage caused by a minor child.  *Id.*  The manager did not mention whether the agreement would apply to adults or families without minor children.  *Id.*

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

At the meeting, the manager also invited tenants to share their thoughts about the rules regarding minor children. Salazar Decl. at ¶ 10. Ms. Salazar stated that she felt intimidated by the manager's threat to evict her. *Id.* The manager responded that she held the meeting for Ms. Salazar's benefit, asked if Ms. Salazar was aware of the Defendant's written rules applying to minor children, and threatened to serve Ms. Salazar with a 60-day notice terminating her tenancy at the subject property. *Id.* Approximately forty-five minutes later, the manager went to Ms. Salazar's unit and served her with a 60-day notice terminating her tenancy. *Id.*

On or around April 7, 2016, Ms. Salazar contacted the Housing Rights Center ("HRC") to share her complaints about the Defendant's overly restrictive rules against minor children and the retaliatory 60-day notice she had received. Salazar Decl. at ¶ 10.

On or about May 19, 2016, the HRC conducted a survey of tenants at the subject property. Calderon Decl. at ¶¶ 5-6. The survey confirmed the Salazars' allegations of overly restrictive rules against minor children at the subject property. *Id.*

On or about May 25, 2016, the HRC also spoke with a tenant at the subject property who stated that Ms. Cuamea does not allow children in the common area. Calderon Decl. at ¶ 7. The tenant further stated that Ms. Cuamea has a practice of intimidating tenants with threats of eviction. *Id.*

The HRC has received complaints in the past against Defendant for implementing and enforcing overly restrictive rules against minor children. Calderon Decl. at ¶ 8. In 2010 the HRC received similar complaints concerning familial status discrimination at the subject property involving Defendant and the onsite manager, Diana Cuamea. Yin Decl. at ¶ 5. At the time Defendant adopted and enforced facially discriminatory rules that limited access to and use of the subject property by minor children. Defendant also issued notices to terminate the tenancies of several families with minor children based on overly restrictive rules.

*Id.*   On or about October 5, 2010, the HRC sent correspondence to Defendant describing the discriminatory practices occurring at the subject property and the relevant fair housing laws.   *Id.*   Defendant thus has long known that targeting or discriminating against minor children violate the fair housing laws.

As a result of Defendant's actions, the Salazars have suffered injury. Salazar Decl. at ¶ 11.   After being served with the 60-day notice the Salazars have suffered from emotional distress including stress, anxiety, and insomnia that has been exacerbated by the impending threat of eviction.   *Id.*   Importantly, a discriminatory eviction would cause abruptly sever the Salazars' longstanding ties with the community and disrupt their work lives and their children's ties to the same educational system they have attended for the past 13 years.

On May 27, 2016, Plaintiffs filed this affirmative lawsuit with this Court against Defendant based on violations of the federal Fair Housing Act and corresponding state laws.   Doc. 1.

On June 1, 2016, Plaintiffs caused the Complaint to be served on Defendant. Doc. 8.

On June 1, 2016, Plaintiffs' counsel notified Defendant of Plaintiffs' intent to pursue a TRO in federal court if Defendant intended to act on the notice to terminate tenancy.   Yin Decl. at ¶¶ 8-10.

Accordingly, the Salazars hereby move this Court pursuant to Fed. R. Civ. P. 65, for the entry of a temporary restraining order to protect them from a discriminatory and retaliatory eviction.   By this application Plaintiffs seek to prevent Defendant from taking any steps to evict the Salazars and their minor children from their rental unit owned and operated by Defendant.   The Salazars also seeks, after an evidentiary hearing, entry of a preliminary injunction.

## III.   ARGUMENT

The Court should grant the Salazars' request for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction to prevent the

substantial and irreparable harm that will result if Defendant proceeds to evict the Salazars and their children from their home.

### A.    Standard for Granting Injunctive Relief

Plaintiffs seek a temporary restraining order to maintain the status quo until their motion for preliminary injunction can be heard.  The "status quo is the last uncontested status which preceded the pending controversy."  *Lopez v. Heckler*, 725 F.2d 1489, 1509 (9th Cir. 1984).

Plaintiffs seeking an injunction must establish that (1) the plaintiffs are likely to succeed on the merits of their claims against the defendant; (2) plaintiffs will likely suffer irreparable harm in the absence of an injunction, (3) the balance of equities tips in their favor, and (4) injunctive relief is in the public's interest because it provides protection against housing discrimination.

In the Ninth Circuit, to obtain injunctive relief, "the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989).

These two formulations represent two points on a sliding scale where the required degree of irreparable harm increases as the probability of success decreases.  *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006).   Utilizing either test the Salazars can demonstrate the appropriateness of an injunction.  The Salazars can demonstrate both a *high* probability of success on the merits and *strong* possibility of irreparable harm.  The Salazars can also demonstrate the balance of hardships *strongly* tips in their favor and injunctive relief is in the public's interest because it provides protection against housing discrimination.  Accordingly, the Salazars respectfully request that the Court issue a temporary restraining order to enjoin Defendant from

commencing an unlawful detainer proceeding against them pending a preliminary injunction.

**B.    Plaintiffs Will Likely Succeed on the Merits of their Claim of Familial Status Discrimination**

To establish a likelihood of success on the merits, plaintiffs need not show that they are "certain to win."   11 C. Wright & A. Miller, Federal Practice and Procedure § 2984 at 452  Establishing a *prima facie* case is sufficient.  *Congress on Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir. 1963).  Here, the Salazars easily establish a *prima facie* case of familial status discrimination in violation of the FHA and FEHA.[1]

**1.    The Manner in Which Defendant Enforces Building Rules Discriminate Against Plaintiffs on the Basis of Familial Status**

The FHA specifically states that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status." 42 U.S.C. § 3604(b).

A housing provider may establish reasonable safety rules for a residential apartment complex.  These safety rules, however, must not single out minor children for less access to common areas or amenities.  Rules that completely forbid minor children from using common areas or amenities are facially discriminatory because they subject a protected group of individuals to explicitly

---

[1] The California Fair Employment and Housing Act (FEHA) provides the same rights and remedies as the federal FHAA, as well as creating additional state protections. Cal. Gov't Code § 12955.6 ("Nothing in this part shall be construed to afford to the classes protected under this part, fewer rights or remedies than the federal Fair Housing Amendments Act of 1988 (P.L. 100-430) and its implementing regulations (24 C.F.R. § 100.1 et seq.) . . . .  This part may be construed to afford greater rights and remedies to an aggrieved person than those afforded by federal law and other state laws"); *see also Broadmoor San Clemente Homeowners' Assn. v. Nelson*, 25 Cal. App. 4th 1, 5-7 (1994) ("it clearly was the intent of the Legislature, in adopting the 1993 amendments [to FEHA], to conform California law on the subject of fair housing to the Federal Fair Housing Act.").

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

differential and discriminatory treatment.   42 U.S.C. § 3604(b); 24 C.F.R. § 100.65(b)(4); *see also Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1501 (10th Cir. 1995).  If a landlord wishes to establish safety rules, they must apply equally to all tenants regardless of age.  *See, e.g., HUD v. Paradise Gardens,* Fair Housing – Fair Lending ¶25,037 at 25,391 (HUD ALJ 1992) (finding restrictions placed on resident children's use of the swimming pool facially discriminatory because the restrictions did not apply to adult tenants).

A housing provider may also establish reasonable rules for permissible conduct in common areas.  These rules must apply to all tenants and should not target the activities of minor children.  *Fair Housing Congress v. Weber,* 993 F. Supp. 1286 (C.D. Cal. 1997) (holding a rule that prohibited children from "playing or running" in the building violated the FHAA because it was a limitation on the use by minor children of the building's facilities).

Here, the manner in which Defendant enforces the building's rules and policies discriminatorily target families with minor children.  Defendant's onsite manager enforces building rules by telling children to go inside their units when they are found outside in the common areas or harassing parents by repeatedly asking them to bring their minor children indoors.  Defendant has also threatened to evict tenants for failing to abide by Defendant's rules enforced against minor children.  On April 4, 2016, the onsite manager organized a meeting of tenants with children.  She reminded all tenants that minor children were not allowed in the common areas unless every adult and family with minor children signed an agreement where they assume liability for any property damaged caused by a minor child.

When a housing provider wants to introduce restrictive rules applicable only to tenants with minor children, the housing provider must establish that the rules (1) constitute a compelling business necessity, and (2) that she has used the least restrictive means to achieve that end.  *Weber,* 993 F. Supp. at 1292; *United States*

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

1  *v. M. Westland Co.,* Fair Housing – Fair Lending ¶15,941 (C.D. Cal. August 3,
2  1994).

3      Here, Defendant cannot successfully state a compelling business necessity
4  for enforcing her rules and policies only against children, nor can she demonstrate
5  that she used the least restrictive means to achieve that goal.  *Weber,* 993 F. Supp.
6  at 1292.    Further, Defendant has failed to articulate *any* business need for
7  restrictively enforcing rules against minor children at the subject property.

8      **2.    Defendant's Notices and Statements Concerning Children**
9          **Discriminate against Plaintiffs on the Basis of Familial**
10         **Status**

11     The FHA makes it unlawful "To make, print, or publish, or cause to be
12  made, printed, or published any notice, statement, or advertisement, with respect to
13  the sale or rental of a dwelling that indicates any preference, limitation, or
14  discrimination based on . . . familial status." 42 U.S.C. § 3604(c).  This applies to
15  all "written or oral notices or statements by a person engaged in the sale or rental
16  of a dwelling." 24 C.F.R. § 100.75(b).

17     A statement will violate Section 3604(c) if it suggests to an ordinary person
18  that there is a preference for or against a protected group of individuals in the sale
19  or rental of housing.  *Jancik v. HUD,* 44 F.3d 553, 556 (7th Cir. 1995).  The author
20  or speaker need not intend for the statement to be discriminatory; rather, the
21  message conveyed is most important.  *Ragin v. New York Times Co.,* 923 F.2d 995,
22  999-1000 (2nd Cir. 1991).

23     Defendant, by and through her property manager, repeatedly made oral
24  statements to Plaintiffs and the other tenants that children are not allowed in
25  common areas at the subject property without adult supervision.  The manager also
26  told Ms. Salazar that she would receive a notice to terminate her housing if she
27  disagreed with Defendant's rules against minor children.    An ordinary person
28  would find that these rules and notices are limiting to children's use of the subject

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

property and therefore targeting and restricting the activities of tenants with minor children.  Thus, Defendant is in violation of Section 3604(c).

### C.   Plaintiffs and Their Four Minor Children Will Likely Suffer Irreparable Harm

If a TRO is not issued then the Salazars and their four minor children will be evicted from their home of 13 years.  The loss of a home is an irreparable injury that cannot be fully compensated by money damages.  *See Mitchell v. U.S. Dep't of Housing & Urban Dev.*, 569 F. Supp. 701, 705 (N.D. Cal. 1983); *see also Johnson v. U.S. Dep't of Agriculture*, 734 F.2d 774, 789 (11th Cir. 1984) ("irreparable injury is suffered when one is wrongfully ejected from his home.").

The *Mitchell* case is instructive.  It states:

> If a preliminary injunction is not issued, plaintiff would lose her home.  As plaintiff has children, the injury caused by loss of a home is far more significant.  If plaintiff and her children are unable to locate housing they can afford, they would be homeless and subject to the many perils that homelessness brings.  Even if plaintiff could quickly locate new housing, it would likely be in another community.  Such a move would be disruptive to her life, and particularly to the lives of her children, because of the loss of friends and community contacts and a change in schools.

*Mitchell*, 569 F. Supp. at 705.  Here, the Salazars and their four minor children have established strong ties to the community.  The Salazars' children, who are ages nine, ten, thirteen, and sixteen, attend schools in their community and are involved in sport leagues in their community.  Any move will disrupt the Salazars' lives, and particularly the lives of their four minor children.

Additionally, irreparable harm may be presumed where the defendant engaged in patterns or practices prohibited by a statute that provides for injunctive relief.  The FHA provides for any temporary or permanent injunction.  42 U.S.C. § 3613(c)(1); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) ("irreparable injury may be presumed from the fact of discrimination and violation of fair housing statutes").

Defendant engaged in a pattern or practice with the purpose and the effect of discriminating against families with children in violation of the FHA.  Thus, the Salazars and their children are presumed to have suffered irreparable injury from Defendant's violation of the fair housing laws.  The Salazars will continue to suffer irreparable harm from Defendant's discrimination against families with minor children unless the Defendant is stopped from evicting the Salazars and their four minor children.

Furthermore, "once a plaintiff demonstrated the likelihood of success on the merits of a claim of housing discrimination, irreparable injury must be presumed." *Gresham*, 730 F.2d at 1423.  Here, the Salazars demonstrated the likelihood of success on the merits of their housing discrimination claim by making a *prima facie* case for their claim.

Harm will be done once an innocent third party rents the property, as the Court is not authorized to return the Salazars and their children to their original home.  42 U.S.C. § 3613(d).  Unless the status quo is maintained, the Salazars and their four minor children will lose their affordable home permanently. *See, Brown v. Artery Organization*, 654 F. Supp. 1106, 1118 (D.D.C. 1987).

**D.  The Balance of Hardships *Strongly* Tips in Plaintiffs' Favor**

The harm to the Salazars and their four minor children if denied their right to reside in their home free from familial status discrimination far outweighs the harm to the Defendant from staying the eviction.  The Salazars and their children have

resided in their home for 13 years and have built relationships and connections in their community.  If Defendant is allowed to evict the Salazars and their children, their lives will be disrupted by forcing them to find new housing and likely new schools for their four children.

On the other hand, Defendant will suffer little, if any, burden.  Courts have repeatedly held that the hardship of a tenant's eviction far outweighs any modest financial or administrative burden a stay of eviction would impose on a landlord. *See, Jackson v. Jacobs*, 971 F. Supp. 560, 565 (N.D. GA 1997); *McNeill v. New York City Housing Authority*, 719 F. Supp. 233, 255 (S.D.N.Y. 1989); *Brown v. Artery Org. Inc.*, 654 F. Supp. 1106, 1118-19 (D.C. DC 1987).

Plaintiffs will continue to make timely rent payments and will continue to abide by the terms of their lease.  Thus, Defendant can show no hardship if the court enjoins Defendant from evicting Plaintiffs.  Thus, the impending eviction of the Salazars and their children face tips the balance of hardships strongly in favor of the Salazars.

## E.   Where Injunctive Relief Provides Protection Against Housing Discrimination, It Furthers the Public Interest

Courts examine the public interest when determining the appropriateness of a preliminary injunction.  *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).  Although, at times, this inquiry has been reduced to balancing hardships, this inquiry is better seen as an element deserving of separate attention where the public interest may be affected.  *Id.*

Here, the inquiry is short because the FHA provides for any temporary or permanent restraining order pursuant to 42 U.S.C. § 3613(c)(1).  Thus, by permitting temporary injunctive relief, this statute already speaks to a significant public interest in preventing discrimination.

Congress and the courts have repeatedly stated that effective enforcement of the fair housing laws serves the public interest, *see, e.g.* 42 U.S.C. §3601 ("[i]t is

-12-

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."); *Gresham v. Windrush Partners*, 730 F.2d 1417, 1423 (11th Cir.).   Where injunctive relief is used to provide protection against housing discrimination, the public interest is furthered.   This significant public interest "is an important consideration in the exercise of equitable discretion in the enforcement of statutes." *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987).

Therefore, by pursuing a temporary injunctive relief, the Salazars seek a remedy furthering the public interest.

**IV.   CONCLUSION**

For the foregoing reasons, the Salazars respectfully request that this Court issue the requested TRO enjoining Defendant from evicting Plaintiffs Sergio Salazar and Alma Salazar and their four minor, pending resolution of the Court's Order to Show Cause re: Preliminary Injunction.

Dated:  June 2, 2016                              Respectfully Submitted,

JOEL MARRERO
Attorney for Plaintiff(s)

*EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER